1                    UNITED STATES DISTRICT COURT
                       FOR THE DISTRICT OF HAWAII
2
UNITED STATES OF AMERICA,     )     Case No.  CR10-00576SOM
3                             )
                 Plaintiff,   )     Honolulu, Hawaii
4                             )
        v.                    )     January 19, 2011
5                             )     2:04 p.m.
MORDECHAI YOSEF ORIAN, aka    )
6  MOTTY, PRANEE TUBCHUMPOL, aka )
SOM, SHANE GERMANN, SAM       )
7  WONGSESANIT, BRUCE SCHWARTZ,  )
JOSEPH KNOLLER,               )
8                             )
                 Defendants.  )
9  _____ )


     TRANSCRIPT OF MOTION FOR RETURN OF PROPERTY AS TO DEFENDANT
11      ORIAN; MOTION TO MODIFY CONDITIONS OF RELEASE ORDER AS TO
          DEFENDANT TUBCHUMPOL; ARRAIGNMENT AND PLEA TO SUPERSEDING
12     INDICTMENT; INITIAL APPEARANCE AND ARRAIGNMENT AND PLEA AS
            TO DEFENDANT JOSEPH KNOLLER; STATUS CONFERENCE
13                 RE: TRIAL DATE AND OTHER DEADLINES
                 BEFORE THE HONORABLE BARRY M. KURREN
14                 UNITED STATES MAGISTRATE JUDGE

15

16

17

18

19  Transcriber:              Jessica B. Cahill
                              P.O. Box 1652
20                            Wailuku, Maui, Hawaii 96793
                              Telephone: (808)244-0776
21

22

23  Proceedings recorded by electronic sound recording, transcript
    produced by transcription service.

24

```
 1   APPEARANCES:

 2   FOR PLAINTIFF:            U.S. ATTORNEY'S OFFICE
                              By:  SUSAN CUSHMAN, ESQ.
 3                            300 Ala Moana Boulevard, #6100
                              Honolulu, Hawaii 96813
 4
     FOR DEFENDANT            MYLES BREINER, ESQ.
 5   MORDECHAI ORIAN:         LORRAINE NAKAMURA, ESQ.
                              841 Bishop Street, Suite 2115
 6                            Honolulu, Hawaii 96813

 7   FOR DEFENDANT            HARRISON & MATSUOKA
     PRANEE TUBCHOMPOL:       By:  WILLIAM HARRISON, ESQ.
 8                            841 Bishop Street, #800
                              Honolulu, Hawaii 96813
 9
     FOR DEFENDANT            HARLAN KIMURA, ESQ.
10   SHANE GERMANN:           220 S. King Street, #1660
                              Honolulu, Hawaii 96813
11
     FOR DEFENDANT            FEDERAL PUBLIC DEFENDER'S OFFICE
12   SAM WONGSESANIT:         BY:  ALEXANDER SILVERT, ESQ.
                              300 Ala Moana Boulevard, #7-104
13                            Honolulu, Hawaii 96850

14   FOR DEFENDANT            JEFFREY ARAKAKI, ESQ.
     BRUCE SCHWARTZ:          1188 Bishop Street, #1604
15                            Honolulu, Hawaii 96813

16   FOR DEFENDANT            DANA ISHIBASHI, ESQ.
     JOSEPH KNOLLER:          2055 Nuuanu Avenue, #504
17                            Honolulu, Hawaii 96817

18

19

20

21

22

23

24

25
```

```
 1 │ JANUARY 19, 2011                              2:04 P.M.
 2 │         THE CLERK:  United States District Court for the
 3 │ District of Hawaii with the Honorable Barry M. Kurren, United
 4 │ States Magistrate Judge presiding is now convened.  You may be
 5 │ seated.
 6 │         Criminal number 10-576SOM, United States of America
 7 │ versus defendant (01) Mordechai Orian, defendant (02) Pranee
 8 │ Tubchumpol, defendant (03) Shane Germann, defendant (04) Sam
 9 │ Wongsesanit, defendant (07) Bruce Schwartz, defendant (08)
10 │ Joseph Knoller.
11 │         This case has been called for a hearing on a motion
12 │ for return of property as to defendant (01); motion to modify
13 │ conditions of release order as to defendant (02), A&P to the
14 │ superseding indictment as to defendants (01), (02), (03), and
15 │ (04); initial appearance and A&P to the superseding indictment
16 │ as to defendant (08); and a status conference regarding trial
17 │ date and other deadlines.  Please make your appearances.
18 │         MS. CUSHMAN:  Good afternoon, Your Honor, Susan
19 │ Cushman for the United States.  With me at counsel table is FBI
20 │ Special Agent Gary Brown.
21 │         THE COURT:  Good afternoon.
22 │         MR. BREINER:  Good afternoon, Your Honor, Myles
23 │ Breiner along with Mordechai Orian who is present along with my
24 │ associated Lorraine Nakamura.
25 │         THE COURT:  Good afternoon.
```

1         MR. HARRISON:  Good afternoon, Your Honor, may the

2    record reflect the presence of Pranee Tubchumpol, as well as her

3    counsel Bill Harrison.

4         THE COURT:  Yes, good afternoon.

5         MR. KIMURA:  Good afternoon, Your Honor, Harlan Kimura

6    for defendant number three, Shane Germann.  We did file a

7    written appearance and waiver.

8         THE COURT:  Yes, I've -- I've reviewed that.  Thank

9    you.  Good afternoon.

10        MR. ARAKAKI:  Good afternoon, Your Honor, Jeff Arakaki

11   on behalf of Bruce Schwartz whose presence we ask to be waived

12   for purposes of this hearing.

13        THE COURT:  Yes, very -- very well.  Good afternoon.

14        MR. ISHIBASHI:  Good afternoon, Your Honor, Dana

15   Ishibashi for Joseph Knoller.  I'm making a special appearance

16   on his behalf.  I understand that Mr. Knoller will be retaining

17   counsel in the future, and he's yet to retain that person, but

18   in the interim I will be assisting him in this matter.

19        THE COURT:  Okay.  Very well.  Good afternoon.

20        MR. SILVERT:  Good afternoon, Your Honor, Alexander

21   Silvert on behalf of Mr. Wongsesanit, who is present.

22        THE COURT:  Very well.  Good afternoon.  Why don't we

23   take up the arraignment first and sort of get that out of the

24   way before attending to the other matters?  So, let's see, we

25   ought to start, I guess, with --

```
 1              MR. BREINER:  Mr. Orian?

 2              THE COURT:  Right.

 3              MR. BREINER:  May we proceed?

 4              THE COURT:  Sure, please.

 5              MR. BREINER:  Myles Breiner on behalf of Mr. Orian.

 6    We received a copy of the superseding indictment, waive reading

 7    of the charge, and enter plea of not guilty.

 8              THE COURT:  Okay.

 9              MR. BREINER:  And as the Court's aware, we were

10    discussing off record earlier a trial date in 2012.

11              THE COURT:  Okay.  We'll -- we'll get to that in just

12    in a minute.  And -- and you understand the -- the changes that

13    have been made to the indictment?

14              MR. ORIAN:  Yes, Your Honor, I got it on Friday.  I

15    read it already.

16              THE COURT:  I'm sorry, I didn't hear you?

17              MR. ORIAN:  I got it on Friday, and I read it already.

18              THE COURT:  Okay.  Very good.  Thank you.

19              MR. HARRISON:  And, Your Honor, on behalf of Ms.

20    Tubchumpol we also received a copy of the first superseding

21    indictment, and waive a public reading of the charge, enter a

22    plea of not guilty.

23              THE COURT:  Okay.  And -- and do you understand the

24    changes that have been made to the indictment?

25              MS. TUBCHUMPOL:  Yes, Your Honor.
```

1              THE COURT:  Okay.  Thank you.

2              MR. KIMURA:  Your Honor, for defendant number three,

3    we did receive a copy of the indictment, waive public reading.

4    He enters a plea of not guilty pursuant to his written waiver

5    this morning.

6              THE COURT:  Yes, and I will accept the written waiver

7    that you have filed.

8              MR. KIMURA:  Thank you.

9              MR. SILVERT:  Your Honor, on behalf of Mr. Wongsesanit

10   we have received the copy of the superseding indictment.   We

11   will waive formal reading and enter pleas of not guilty.

12             THE COURT:  Okay.  And so, do you understand the

13   changes that have been made to the indictment?

14             MR. WONGSESANIT:  Yes, Your Honor.

15             THE COURT:  Okay.  Thank you.

16             MR. ISHIBASHI:  Your Honor, on behalf of Mr. Joseph

17   Knoller, number eight, we've received a copy of the first

18   superseding indictment.  We waive the public reading thereof,

19   and enter a plea of not guilty.

20             THE COURT:  Okay.  And is he here?

21             MR. ISHIBASHI:  He's here.

22             THE COURT:  Oh, okay.  So do you understand the

23   changes that have been made to the indictment?

24             MR. KNOLLER:  I do.

25             THE COURT:  Okay.  Now -- now, you -- you were

1   retaining counsel to represent you?

2           MR. KNOLLER:  I didn't get a chance since everything

3   went on so fast on Friday with the long weekend.

4           THE COURT:  Okay.

5           MR. KNOLLER:  I'm in the process of trying to --

6           THE COURT:  When do you anticipate that will -- will

7   occur?

8           MR. KNOLLER:  This coming week.

9           THE COURT:  Okay.  I would ask you to do that really

10  as soon as possible because things will be happening here

11  fairly, you know, quickly, and it's important to -- to get set

12  with the attorney that you want representing you.  Okay.  But in

13  the interim, Mr. Ishibashi, I appreciate your assistance.

14          MR. ISHIBASHI:  Thank you, Your Honor.

15          THE COURT:  Okay.  So as far as the trial date and

16  schedule is concerned what's your thinking?

17          MS. CUSHMAN:  Well, we've been talking briefly before

18  you came out, and we had suggested -- or there was a -- I think

19  everybody was in agreement it would be February 2012.

20          THE COURT:  Does that sound about right?

21          MR. BREINER:  Yes, Your Honor.  Tentatively, yes, that

22  would be a good date to set rather than the very beginning of

23  the new year since a lot of things aren't accomplished in

24  December and because of January, just the lag time.  So February

25  2012 would be an appropriate date to start with.

```
 1                 THE COURT:  Okay.  This case has been declared
 2    complex?
 3                 MS. CUSHMAN:  Yes.
 4                 THE COURT:  Okay.  And all of the defendants are on
 5    board with scheduling.
 6                 MR. HARRISON:  Yes, Your Honor.
 7                 MR. KIMURA:   Yes, Your Honor.
 8                 MR. BREINER:  And of course, Your Honor, that may
 9    change.  We don't know -- again, we're still in the very early
10    stages of discovery.  And so, we have our motion and there's
11    still, apparently, hundreds of thousands of pages of documents
12    that are still being processed.
13                 So we don't know where we're going to be at toward the
14    fall or winter of 2011.  So, obviously, we need to set some
15    preliminary dates --
16                 THE COURT:  Right.
17                 MR. BREINER:  -- along the way.
18                 THE COURT:  Exactly.  Right.  Okay.  Any particular
19    preference in -- in that timeframe?
20                 MS. CUSHMAN:  No, I'm available.
21                 MR. BREINER:  Could I make a suggestion?
22                 THE COURT:  Sure.
23                 MR. BREINER:  Last time I appeared in Court, Your
24    Honor, it was before Judge Mollway on this matter there was --
25    the Government said two to four months just to copy some of the
```

1    discovery they recently seized from my client's property on the

2    mainland, and it's part of our motion for return of property.

3              I would suggest at least that we start, let's say, two

4    months down the road, from this date, to find out where they are

5    with the discovery, and the other things that they've seized,

6    and how soon they can get everything to us.  We're talking

7    servers, computers.  Tens or hundreds of thousands of pages of

8    documents were seized from Mr. Orian's property.

9              THE COURT:  Well, okay.  I mean we'll talk about that

10   in a moment, but you're -- you're saying before setting a trial

11   date?

12             MR. BREINER:  Of setting a trial date and having

13   preliminary dates in the --

14             THE COURT:  Right.  Right.  Right.  Yeah, okay, one

15   step at a time.  Let's -- let's -- let's set the trial date

16   first.  So, you know, I guess in early -- early February.

17             MS. CUSHMAN:  That's fine.

18             THE COURT:  What is the first trial week in February?

19             THE CLERK:  February 7th.

20             THE COURT:  Okay.  How about February 7th?

21             MS. CUSHMAN:  Sounds good to me.

22             THE COURT:  Okay.  Sold, February 7th.  So I would

23   like to, of course, set a motions deadline.  I want to do this

24   well in advance of that.  You know, working back, what would you

25   -- what would you suggest?  I mean does anybody have any thought

 1   on --

 2          MS. CUSHMAN:  How about motions deadline two months?

 3   That would be December, beginning of December, before --

 4          MR. BREINER:  No.

 5          THE COURT:  Yeah, I'm actually thinking earlier than

 6   that.

 7          MR. BREINER:  I would like June at -- at the outside.

 8   The documents -- there's going to be voluminous discovery in

 9   this case.  This is larger than the Orian case that we're still

10   dealing with five years later, Your Honor, and we're talking on

11   a much vaster scale.  They're claiming 600 potential victims in

12   this case.  They still have to disclose all that information.

13   Just looking at the, in a cursory reading of the indictment,

14   over the weekend, it's a massive amount of material they're

15   alleging is in their possession to support these allegations.

16          So June, I think would be -- maybe late -- I would say

17   late June.

18          THE COURT:  But you may not have --

19          MS. CUSHMAN:  No, I would say, like, September then.

20   I know that Ms. French is going to be involved in a trial -- Ms.

21   French is going to be involved in a trial that's going to start

22   in July and probably go a month.  So I would say then we should

23   have motions --

24          THE COURT:  Why don't we do the end of August?

25          MS. CUSHMAN:  That's fine.

1          THE COURT:  So right -- right at the -- right at --

2   you know, so you can get through a lot of the discovery issues

3   and the like, and then, you know, get to motions at that time.

4          MS. CUSHMAN:  That's fine.

5          THE COURT:  You know, it doesn't preclude you if you

6   -- if you need to address something by way of motion earlier.

7   You can do that any time.  No -- no one's forcing yo, you know,

8   not to do something earlier than -- than that, but I want to --

9   at least I want to set a deadline so that we're not, you know --

10  you know, sort of getting closer to trial with some, you know,

11  complex motions.

12         MS. CUSHMAN:  That's fine.

13         THE COURT:  Okay.  Last business day of August, what

14  is that?

15         THE CLERK:  October 31st.

16         MS. CUSHMAN:  August 31st.

17         THE CLERK:  August 31st.

18         THE COURT:  August 31. Okay.

19         MS. CUSHMAN:  That's good.

20         THE COURT:  That will be the date for motions, and

21  then a reply to motions maybe end of September, to give you a

22  little more, just depending upon what we have.  So what's --

23  what's the last day?

24         THE CLERK:  September 30th.

25         THE COURT:  Okay.  And then they'll get set for

1    hearing sometime in the fall.  If -- if you file it, you know,

2    at that time, but if you -- but if there are issues to address,

3    you know, by way of motion I would encourage, you know, these

4    matters to be brought as soon as you know you need to have

5    something determined.

6              THE COURT:  And what about the final pretrial

7    conference?

8              THE COURT:  Okay.  So let's do that a bit earlier as

9    well.  So if we're doing it in February, maybe some time in

10   December, early December?

11             MS. CUSHMAN:  End of -- end of November.

12             MR. BREINER:  How about the end of November?

13             THE COURT:  End of November?  Okay.

14             THE CLERK:  Okay.  November 28, 10:00 o'clock, before

15   Judge Chang.

16             THE COURT:  Okay.  Okay.  Now, are there any other

17   scheduling matters that anybody would like to address?  You were

18   talking about some discovery issues and the like?

19             MR. BREINER:  We have a motion for return of property.

20             THE COURT:  Well, we'll get to that motion in just a

21   second, but --

22             MR. SILVERT:  Your Honor, I -- I have an issue with

23   discovery.  You know, I was involved in the last case involving

24   this kind of charge with a 150 people, and if we don't set some

25   discovery dates for the Government -- drop dead dates for them

```
 1    to provide discovery, thousands of pages will be trickling in
 2    throughout, and you just can't prepare for trial that way.
 3              THE COURT:  Well, that's what I was sort of getting
 4    at.  I mean, what do you think about that, Ms. Cushman?
 5              MS. CUSHMAN:  Well, you know, I'm a little bit behind
 6    the eight ball here.  Ms. French is out of the country.  I can
 7    represent to the Court that there are approximately 226 boxes of
 8    documents that have been sent to West Virginia to be copied and
 9    put on discs.  And there's also 100 hard drive discs.
10              So I know they're -- they're in West Virginia.  I
11    think it's going to probably take a couple months, and I know
12    there's some redacting that has to happen.
13              THE COURT:  So --
14              MR. BREINER:  Well, this -- this issue came before --
15    I'm sorry to interrupt you.  This issue of redaction Judge
16    Mollway raised the same question earlier.  She's asking why are
17    they going to redact my client's own documents.  The -- the 226
18    boxes and the -- what's the other figure?
19              MS. CUSHMAN:  Hundred hard drives.
20              MR. BREINER:  A hundred hard drives, all of that is my
21    client's property.  So why would they want to redact my client's
22    own material?  That's why -- that's why we have the motion for
23    return of property.  So I think what we need to do is set
24    preliminary dates as early as within the next 60 days and keep
25    moving forward, or even say 90 days that the Government's going
```

1    forward with this.

2              They made representations, for example, before Judge

3    Mollway, that it would be four months to get the -- all the

4    documents copied.  Now, in my motion I wrote down two months

5    because that was my understanding at the time when this issue

6    first came up.  Two months to copy everything or four months,

7    and then these issues of redaction is going to take even longer.

8              I-- I agree with what Alexander just said.  There's a

9    real problem with this type of discovery and getting access to

10   it.

11             THE COURT:  So if I set a deadline the end of March

12   you think that's workable?

13             MS. CUSHMAN:  I think that should be okay.  You know

14   what if -- if it's not we'll file something saying why it's not,

15   but I -- I think that's workable.

16             THE COURT:  Okay.  Let's shoot for that.  I'm going to

17   set a deadline for all discovery to be provided last business

18   day of March, so the 31st.

19             THE CLERK:  Yes.

20             THE COURT:  The 31st.

21             MR. SILVERT:  And then in terms of providing the

22   discovery, in a case like this what we would ask is that every

23   document that is provided be bate stamped by the Government and

24   provided in a PDF format.

25             MS. CUSHMAN:  I think that's going to happen; isn't

1  it?  I think that's how it's going to go.

2         MR. SILVERT:  Well, it's supposed to happen.  If

3  there's a formal agreement with the Government and us, at least,

4  that that's how discovery is to be provided, because it's --

5  it's orderly.

6         THE COURT:  Sounds reasonable.

7         MR. SILVERT:  The problem is that what happens is

8  sometimes it doesn't happen and sometimes there's different

9  formats rather than PDF that's provided, and then we can't open

10 them, and we can't look at them.

11         And so, what I'm asking for is an agreement or a court

12 order that every document be bate stamped and provided in a PDF

13 format especially when you're dealing with hundreds of thousands

14 of pages.  If we don't do that up front it's going to create

15 chaos later on.

16         MS. CUSHMAN:  I don't have -- I don't -- I don't have

17 any objection to that, and I thought that's how they were coming

18 anyway.

19         THE COURT:  I mean, you know, that's -- that seems,

20 you know, like a fairly --

21         MR. BREINER:  We're all on the same page.

22         THE COURT:  So let's -- let's -- let's do it that way.

23 I'll make it a part of the -- you know, the order on the docket

24 that --

25         MR. SILVERT:  And one final --

1          THE COURT:  -- discovery is to be provided bate

2    stamped and -- and in a PDF format.

3          MR. SILVERT:  And, Your Honor, one other thing so

4    there's no confusion that discovery is to be provided

5    individually to each counsel, each defendant as opposed to being

6    provided to one, and then we have to make copies for everybody

7    else.

8          MS. CUSHMAN:  I've never seen that.  I don't know what

9    Mr. Silvert's talking about, but I -- it's -- it would be

10   provided individually.  I've never seen it, but he's been here

11   longer than I have.

12         THE COURT:  You never seen what, provided just to the

13   --

14         MS. CUSHMAN:  Provided to one.  I've never seen that

15   in the district since I've been here, but he would know.  He's

16   older and wiser.

17         THE COURT:  You're half -- you're half right.

18         MR. SILVERT:  Just so we're clear, so it doesn't

19   happen.

20         THE COURT:  Okay.  Okay.  So that's -- you know, I

21   think that's the gameplan.

22         MS. CUSHMAN:  All right.

23         THE COURT:  Okay.  Anything else on the scheduling --

24   from a scheduling standpoint?

25         MS. CUSHMAN:  No.

```
 1              THE COURT:  I think that probably covers it.  You
 2    know, if there are problems or issues, you know, let us know
 3    before, you know, these things get out of hand, so that we can
 4    try to stay on track and sort of address these issues as they
 5    come up.
 6              MS. CUSHMAN:  Okay.
 7              THE COURT:  Okay.  So what about the motion for return
 8    of property?  What are we going to do with that?
 9              MR. SILVERT:  Your Honor, may I be excused? I have to
10    get ready for the 2:30 arrest?
11              THE COURT:  Okay.  Sure.  Yes.
12              UNIDENTIFIED MALE:  May I be excused as well, Your
13    Honor?
14              THE COURT:  Please.
15              MR. BREINER:  On my motion, I stand on the motion.
16              THE COURT:  Okay.
17              MR. BREINER:  My -- my concern is that, again, my
18    client's property was taken.
19              THE COURT:  Right.
20              MR. BREINER:  We were here in Court trying to obtain
21    release to go back to the mainland.  The Government opposed it,
22    and I think Ms. French's comments to the Court were interesting,
23    because our motion to allow my client to go back to the mainland
24    identified all of his business properties and his residence, and
25    according to her that was their basis for then going and
```

1    grabbing everything, because they claimed they didn't know about

2    that until then, which is kind of ludicrous, but be that as it

3    may, the fact is -- is that all those things we want unredacted

4    in their original form.  Everything returned.  They can copy it.

5           My understanding is that they have the capacity to do

6    this within two weeks.  That they have -- there's an office and

7    agents in Los Angeles or in the Los Angeles area that do this on

8    a routine basis with these large white collar crime, and it

9    doesn't take two to four months.

10          Now, I understand that Ms. Cushman is sitting in for

11   Ms. French.  Ms. French's trial schedule should not impede the

12   defense discovery process.  That's just pretty simple.  That's

13   why we have Ms. Cushman on the case and that's why we have

14   special agents.

15          THE COURT:  Okay.  Well, let me -- let me hear from

16   Ms. Cushman about this motion?

17          MS. CUSHMAN:  Well, all -- all the discovery now is in

18   West Virginia.  It's not even -- it's not even in Los Angeles

19   anymore.  So that's -- that issue is kind of moot at this point.

20          THE COURT:  He's not talking about discovery at this

21   point, he's talking about his -- his client's property.

22          MS. CUSHMAN:  Well, I think the property he's

23   referring to is -- is the property that's being photo -- was

24   being photocopied as discovery that's going to be turned out.

25          THE COURT:  Okay.

```
1          MS. CUSHMAN:  So it's not even in Los Angeles anymore.
2    It's -- it's in West Virginia.
3          And I know that Ms. French performed some preliminary
4    research concerning the redaction issue, and I believe she still
5    has -- there still is some stuff in there that has to be
6    redacted regardless of what Mr. Breiner says.  Not as much, but
7    I believe the law, and I don't have the law with me, but I
8    believe what she told me over the phone was that some -- some
9    things still do have to be redacted because --
10         THE COURT:  This would be his own material.
11         MS. CUSHMAN:  I know, but I think there's -- Your
12   Honor, it's my understanding, and I haven't seen this, but
13   there's stuff in there like social security numbers of other
14   people, stuff that he shouldn't have had to begin with and
15   that's what needs to be redacted.  That's my understanding.  I
16   haven't seen it, I wasn't there, but -- from Ms. French.
17         MR. BREINER:  Well, maybe we need to have -- look at
18   the minutes or maybe the transcripts of Judge Mollway's colloquy
19   with the Government the last time we appeared in Court.  The
20   Court was, excuse me, Judge Mollway was particular about this
21   and asked the Government to explain factually, legally the basis
22   for depriving my client of his personal property.  It isn't just
23   simply discovery in this case, but it's his entire business
24   history.  He has 20 plus years of business in the United States,
25   plus a global business enterprise.  All of these things were
```

 1    seized.  Nothing related -- our position is nothing related to

 2    this case.

 3        So they've deprived him of even the ability to resurrect

 4    his business.

 5            THE COURT:  Okay.  You know, so we're on the subject

 6    of redactions.

 7            MS. CUSHMAN:  Right.

 8            THE COURT:  You know, it's hard for me to, you know,

 9    to address this in a vacuum.  It seems to me that if you intend

10    to redact any information this is a matter that; one, you -- you

11    either need to be on the same page about it, or this needs to be

12    addressed by the Court as to what it is that -- that -- that you

13    feel has to be redacted and why.

14            MR. BREINER:  Well, in that case --

15            THE COURT:  Unless you can agree to it.  But as far as

16    returning his property or his material --

17            MS. CUSHMAN:  Well, Your Honor, it's not -- it's our

18    position that it's not his property, it's evidence and that all

19    this information that was seized relates to either things that

20    were in the first indictment or charges that are currently in

21    the -- in the superseding indictment.

22            THE COURT:  And -- and so, you're saying that you can

23    return this, pursuant to this schedule that we just established?

24            MS. CUSHMAN:  Yes.

25            MR. BREINER:  Well, obviously, we vigorously disagree

 1   with that.  What was in the first indictment is not part of this

 2   massive stuff that they seized from my client, the 226 boxes,

 3   100 hard drives.  He has other businesses other than Global.

 4   Global Horizon was one business.  That's the business entity in

 5   issue here.  And even in the superseding indictment there's no

 6   discussion about all the other businesses that he had, and he

 7   was legitimately in possession of any privacy issue, because

 8   those -- that was material that was part of his proprietary

 9   right to possess.

10          So this notion -- and Judge Mollway raised this issue

11   and told the Government to put up or shut.

12          THE COURT:  Well --

13          MR. BREINER:  Document it, give us a brief, do

14   something to establish the right to redact my client's personal

15   information, things that he possessed related to his other

16   businesses.

17          THE COURT:  It really does seem to me that -- you

18   know, I understand it's evidence and, you know, this is a matter

19   that's really separate from discovery.  This is a matter

20   separate from what, you know, you're providing to the defendants

21   as -- you know, as, you know, support for the case, but it's the

22   materials that were seized.  They can be in some manner, you

23   know, copied or, you know, imaging done, and then that -- that

24   material should be, you know, returned --

25          MS. CUSHMAN:  I'll -- you know, Your Honor, Ms. French

1  | -- one minute.

2  |           MR. BREINER:  Your Honor, this is in a dislocation --

3  |           THE COURT:  Hold on.  I'm talking to her for a second.

4  |           MS. CUSHMAN:  I -- I think she comes back on Monday.

5  | I mean, I -- I -- the best -- I don't even know who to call in

6  | West Virginia.  I'll have to call her paralegal.  I can come

7  | back to the Court tomorrow and make representations, or on

8  | Friday, about what I find out and how soon I can get this done.

9  |           THE COURT:  Yeah.

10 |           MS. CUSHMAN:  I just -- I don't know --

11 |           THE COURT:  Okay.

12 |           MS. CUSHMAN:  -- I don't know who to contact.

13 |           THE COURT:  For your client's benefit let's -- let's

14 | -- let's explore this a bit, okay.

15 |           MR. BREINER:  I'm all in favor of that.  I just --

16 |           THE COURT:  Okay.  Maybe -- maybe we should have a

17 | further hearing on this motion sometime, what -- what early next

18 | week?

19 |           MS. CUSHMAN:  Yeah, that would be great.  And I could

20 | -- I could have some --

21 |           THE COURT:  And let's look into this.

22 |           MS. CUSHMAN:  -- I could have some answers.  And give

23 | me some questions, I'll get them addressed.

24 |           THE COURT:  Well, I mean, you know, I -- I -- I

25 | certainly -- I -- I talk with agents all the time on search

1   warrants about the issue of when, you know, computer material

2   and the like can be returned, and under what circumstances, and

3   how it's done.  This is separate and apart from -- you know,

4   from the business of discovery and, you know, and -- and keeping

5   evidence.

6         So I think this is a matter that -- that we should

7   separately address, and we could do this pursuant to this

8   motion, and -- and I'd like you to look into, you know, how that

9   can be accomplished and on what kind of timetable.

10         MS. CUSHMAN:  Okay.

11         THE COURT:  And so, we'll take this up early next

12   week.

13         MR. BREINER:  I have no problem with that.

14         THE COURT:  Okay.

15         MR. BREINER:  I have still one concern.  This is the

16   second time I've had this problem with Ms. French's schedule and

17   Ms. Cushman not being able to address it.

18         THE COURT:  Okay.  You know, look, let's just do this

19   as best we can here.

20         THE CLERK:  January 25th, Tuesday, at 1:30.

21         THE COURT:  Okay.  That will be a further hearing on

22   this particular motion.

23         MR. BREINER:  Thank you, Judge.

24         THE COURT:  Okay.  Good.  Let's see here.  Defendant

25   Tubchumpol, the motion -- motion to modify conditions I assume

```
 1 | --
 2 |          MS. CUSHMAN:  I have no objections.
 3 |          THE COURT:  Okay.
 4 |          MR. HARRISON:  Well, Your Honor, there's actually an
 5 | additional modification.  We were going to set up a bail in this
 6 | matter through a bail bonding agency, but in the interim the
 7 | third party custodian has, in fact, posted property.
 8 |          We had -- the way the Court had ordered this set up
 9 | was through another individual, Mr. Rogers, but Mr. Rogers'
10 | property was insufficient, but her third party custodian has now
11 | posted the appropriate mortgage on his property for the $20,000.
12 |          THE COURT:  Right.
13 |          MR. HARRISON:  We received yesterday a facsimile of
14 | the -- the deed from their attorneys in California, and we're
15 | going to receive the original -- we should receive it by
16 | tomorrow or the next day.
17 |          What I'd ask the Court to do is allow me to have Ms.
18 | Tubchumpol bail today with the -- with the understanding that
19 | the original documents will be on file.  They would have been
20 | filed in California, but the original documents will be in the
21 | court here by Friday.  But she's been sitting in -- in jail for
22 | four months since the Court has ordered her release.
23 |          THE COURT:  So -- so the fact that a copy has been
24 | furnished; is that what you're saying?
25 |          MR. HARRISON:  Yes, a copy has been furnished to us.
```

1   The originals are on its way, and I got this yesterday at, like,

2   4:50 in the afternoon.  And I provided a copy to Ms. Wall as

3   well.

4          MS. CUSHMAN:  I don't -- I don't think she has

5   anyplace to stay here if she gets out.

6          MR. HARRISON:  Your Honor, I believe we can -- she can

7   be put up in a hotel in the interim.  We're going to get flight

8   arrangements to have her go back to L.A.  She's going to be with

9   the third party custodian.

10         THE COURT:  Right.

11         MR. HARRISON:  It's just that she's been in -- sitting

12  in prison for four months since the Court has ordered her

13  release.

14         MS. CUSHMAN:  I understand, but she's got -- I mean

15  you have no plan about where she's going to go.  We don't have a

16  plane ticket.  I mean I have no problem if there was a plan, but

17  just to let her out without a plan --

18         MR. HARRISON:  Your Honor, counsel has indicated

19  they'd put her up in -- in his house.  His wife is Thai, and --

20  and he's willing to -- to -- to put her up for a day until we

21  get her a plane ticket, but we have the funds to obtain a plane

22  ticket, and we're going to -- and she's going to be in the third

23  party custodianship of --

24         MS. CUSHMAN:  It's the co-defendant.

25         MR. HARRISON:  Your Honor, this is the attorney, Your

1    Honor, it's not -- it's not the codefendant.

2         MR. BREINER:  My client is not residing with me, Your

3    Honor.

4         MS. CUSHMAN:  No.

5         MR. HARRISON:  Your Honor, she has been sitting in

6    jail for four months.  Everybody else has been out.  She's been

7    sitting there waiting for this -- this bail.

8         THE COURT:  You would get her a ticket tomorrow?

9         MR. HARRISON:  We would get her a ticket tomorrow,

10   Your Honor.

11        MS. CUSHMAN:  Then we can come back tomorrow.  If she

12   has a ticket tomorrow she can -- she can leave tomorrow.

13        MR. HARRISON:  Your Honor, you had determined in a

14   previous hearing in October that you set up conditions that you

15   believe has taken into consideration of flight risk and

16   dangerousness in this matter.  You found that she can released

17   in these conditions.  We were supplied the conditions.  We're

18   only asking that she be released.

19        MS. CUSHMAN:  I -- I know, but, you know, Your Honor,

20   we -- and they found -- and it's because her third party

21   custodian wouldn't post the bond at that time.  It's through

22   nobody else's fault.

23        MR. HARRISON:  Your Honor, notwithstanding that the

24   Court set the -- the parameters of the order.

25        THE COURT:  Yeah, but, you know, the conditions, you

1    know, were to have her immediately, you know, travel to

2    California to reside with the, you know, the custodian.

3            MR. HARRISON:  Your Honor, we could probably get her

4    on a flight this evening if that's the Court's (inaudible).

5            THE COURT:  That's the way -- I -- you know, I'll --

6    I'll authorize her to be released as soon as you have a ticket

7    --

8            MR. HARRISON:  That's fine.

9            THE COURT:  -- to -- you know, to get -- get to

10   California.

11           MS. CUSHMAN:  I have no objection to that.

12           THE COURT:  Okay.  So you don't need the original on

13   file.  So I'll modify the -- the -- you know, the bail

14   conditions to allow for --

15           MS. CUSHMAN:  And also as long as Pretrial is, you

16   know, agreeable to that as well.

17           MR. HARRISON:  Your Honor, she's --

18           THE COURT:  Okay.

19           MR. HARRISON:  -- when she's released she's going to

20   go to Pretrial, and they'll -- they will make sure --

21           THE COURT:  Right.  As soon as you have a ticket she

22   can be released, and then, you know, travel to California.

23           MR. HARRISON:  All right.

24           THE COURT:  Okay.

25           MR. HARRISON:  Thank you, Your Honor.

```
1              THE COURT:  That's the way it will be.

2              MR. HARRISON:  Your Honor, we need to have --

3              THE COURT:  And I'll -- I will add the change in the

4   mortgage to Alberto Molinar.

5              MR. HARRISON:  And, Your Honor, I believe that she

6   needs to sign some documents, and -- and we need to do that

7   today if we're going to get her out on a -- on a plane.

8              THE COURT:  Right.

9              MR. HARRISON:  And, you know, the Clerk's office

10  closes in -- in a bit.

11             THE COURT:  Okay.

12             MR. HARRISON:  So we need to get her over there and

13  have the paperwork sent down to -- to the Marshals --

14             THE COURT:  Yes.

15             MR. HARRISON:  -- so just to get it --

16             THE COURT:  Okay.  You can do that all this afternoon.

17  If you can get her out on a plane tonight, terrific.  Good.

18             MR. HARRISON:  We'll get her out.  Thank you, Your

19  Honor.

20             THE COURT:  Okay.  Is there anything else that we need

21  to take up?  I think that covers it; right?

22             THE CLERK:  Your Honor, Joseph Knoller's bail

23  conditions need to be taken --

24             THE COURT:  Oh, okay.  Right.  Oh, and Ms. Cushman --

25             MS. CUSHMAN:  Same -- same conditions.
```

```
 1              THE COURT:  Okay.  Mr. Knoller, is he -- okay.  So the
 2   bail conditions that were set on the mainland will remain -- are
 3   set here.  I take it you have no -- no issue with that, Mr.
 4   Ishibashi?
 5              MR. ISHIBASHI:  No, Your Honor.
 6              THE COURT:  Okay.  Good.  Okay.  I'm going to take an
 7   in court recess before going on to the next case.
 8              (At which time the above-entitled proceedings were
 9   concluded at 2:37 p.m.)
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

1

2

3                          <u>CERTIFICATE</u>

4          I, court approved transcriber, certify that the

5   foregoing is a correct transcript from the official electronic

6   sound recording of the proceedings in the above-entitled matter.

7          Dated this 16th day of May, 2011.

8

9                          <u>/s/ Jessica B. Cahill</u>

10                         Jessica B. Cahill

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25